**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 05-102-JBC**

**GEORGE W. JARRETT,**                                                                   **PLAINTIFF,**

**V.**                                  **MEMORANDUM OPINION AND ORDER**

**DURO-MED INDUSTRIES, ET AL.,**                                        **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motions by the defendant, Duro-Med Industries ("Duro-Med"), for summary judgment (DE 107, 108, 110).  The court, having reviewed the record and being otherwise sufficiently advised, will grant the motions in part and deny them in part.

**I. Factual Background**

This action arises from an accident suffered by the decedent, Rose Jarrett ("Jarrett"), involving a transport chair she purchased from Grogan's, Inc. ("Grogan's").  Grogan's purchased the chair from Duro-Med; the transport chair was allegedly manufactured by ENSD Corporation a/k/a Medex Care Co., Ltd. ("ENSD") and then sold to Duro-Med.  While Jarrett was in the care of and being transported by The American National Red Cross d/b/a American Red Cross Wheels ("Wheels") for required dialysis treatment, the right wheel brake[1] of the transport

_____

[1] The parties refer to the alleged defective product as a wheel lock, wheel brake, and a braking mechanism.  For consistency, this court has referred to it as a

1

chair was damaged when a Wheels employee engaged it and rendered it defective. Although unable to obtain a replacement transport chair or wheel brake, the plaintiff removed the allegedly defective wheel brake from the chair and continued to use it.

On March 6, 2004, Jarrett was in the process of being transported to her dialysis treatment by Carl Wayne Wilson ("Wilson"), a Wheels employee.  After locking the left wheel brake, Wilson let go of the transport chair to open the bus doors, and Jarrett's transport chair spun, causing her to fall onto her driveway. Jarrett was transported to the hospital to receive treatment for the injuries that she sustained in the fall, and she remained in the hospital until her death on March 23, 2004.

The plaintiff alleges claims for negligence, products liability, breach of warranty, and wrongful death against Duro-Med and ENSD.[2]

## II. Legal Analysis

Duro-Med claims that it is entitled to summary judgment based on K.R.S. § 411.340, Kentucky's "middleman" statute, and based on proximate cause; the plaintiff's expert's spoliation of critical evidence; the plaintiff's design-defect, manufacturing-defect and failure-to-warn claims; the plaintiff's negligence and punitive-damages claims; and the plaintiff's breach-of-express-warranty claim.  The

---

"wheel brake."

[2] The suit was initiated against several defendants, including Duro-Med, Grogan's, Wheels, Wilson and ENSD.  Wheels, Grogan's, and Wilson have settled with the plaintiff.  ENSD has not filed an answer or any other pleading in this action.

2

court will consider each of these arguments in turn.

### A. K.R.S. § 411.340

K.R.S. § 411.340 provides as follows:

In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package . . . shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor, or retailer breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

Thus, before the middleman statute will protect a distributor or seller, two predicates must be satisfied: (1) the manufacturer must be identified and subject to the court's jurisdiction; and (2) the product sold by the distributor or seller must have been unaltered from its original manufactured condition. *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 551 (E.D. Ky. 2001). As to the first requirement, Duro-Med asserts that the manufacturer of the product, ENSD, is identified, based on the time in which the chair was purchased and the serial number on the transport chair.

On October 7, 2003, Jarrett purchased a transport chair model number DMI 1019-19[3] from Grogan's. DE 115 Exhibit 1. Although no markings on the chair

---

[3] Model number DMI 1019-19 was purchased by Duro-Med from different suppliers over the course of time. In 2001 and post-April 2004, Duro-Med purchased transport chair model number 1019 from Valentine and in 2002 from American Bantex. DE 115 Exhibit 12 at 2. In 2002, Duro-Med stopped buying the 1019-19 transport chair from other suppliers and depleted its inventory to a level

3

indicate specifically that ENSD manufactured Jarrett's transport chair, Richard

Shutter ("Shutter"), Duro-Med's vice president of finance and operations, identified

the serial number on the chair, "Ser. No.:001321," as the type used by ENSD.  DE

130 Exhibit 1 at 62 and Exhibit 3.  This was based on the absence of any alpha

character in front of the serial number.  *Id.* ("[O]ther suppliers typically have an

alpha character in front of their serial numbers" and ENSD did not follow that

practice.).  A July 4, 2002, email from ENSD also states it will "make all the

. . . transfer chairs."  DE 107 Exhibit 5.

Based on the above facts, Duro-Med is certain ENSD manufactured the

transport chair at issue.  The plaintiff has presented no evidence to rebut these

facts.  Instead, the plaintiff points to the registry tag on Jarrett's chair,[4] which is a

registry number for American Bantex, not ENSD.  As mentioned, American Bantex

previously supplied Duro-Med with Model 1019 transport chairs.  Although Duro-

Med has no specific knowledge as to why ENSD was putting the American Bantex

_____

where every chair was purchased from ENSD at the end of 2002 and throughout
2003.  DE 115 Exhibit 4 at 62; *see also* DE 115 Exhibit 7 at 2 ("Duro-Med adheres
to a policy of 'first in, first out' for the inventory on hand" and in November 2002,
Duro-Med had reduced its inventory of model 1019 transport chairs from non-ENSD
suppliers to only one unit.).  In 2003, Duro-Med distributed only ENSD transport
chairs and several times during that year it sold model 1019 ENSD transport
chairs to Grogan's.  DE 110 Exhibit 3

  [4] Specifically, the tag reads "Registry No. CA-34777 - Certification is made
by the manufacturer that the materials in this article are described in accordance
with law." DE 115 Exhibit 9.  The California Bureau of Home Furnishings and
Thermal Insulation provided documentation that this number is registered to
American Bantex.  DE 115 Exhibit 10.  Duro-Med does not dispute that this number
is an American Bantex registry number.  DE 115 Exhibit 11 at 6.

4

tag on the transport chair, it offers two possible explanations:  (1) ENSD manufactured the chair for American Bantex; or (2) ENSD duplicated an American Bantex chair right down to the registry tag after Duro-Med provided ENSD an American Bantex chair for comparison purposes.  DE 130 Exhibit 2; DE 115 Exhibit 11.  Duro-Med contends it did not ask ENSD to duplicate the chair.  DE 130 Exhibit 2 at 7-8.  The defendant has the initial burden of showing there is no genuine issue of fact.  The court cannot find as a matter of law that the manufacturer has been identified.  Duro-Med's first speculation, that ENSD manufactured American Bantex chairs, could easily be viewed the other way – that American Bantex manufactured ENSD chairs.  Even assuming this is an ENSD serial number and Duro-Med is certain it obtained the chair from ENSD, those facts alone do not prove ENSD *manufactured* the chair at issue given the presence of another company's registry tag.  Duro-Med maintains ENSD's email stating it would make the chairs corroborates its assertion that ENSD manufactured the chair, but Duro-Med cannot present sufficient evidence to explain the registry tag.

Duro-Med's second speculation, that ENSD manufactured the chair and duplicated the American Bantex chair exactly, including the registry tag, could be interpreted by a juror as evidence that Duro-Med participated in the design of the transport chair.  A product liability action includes actions brought on account of personal injury or death caused by or resulting from the design, formulation, development of standards, certifying, marketing, or advertising of any product.

5

K.R.S. § 411.300.  Duro-Med provided ENSD with an American Bantex transport chair to ensure that ENSD would provide a comparable product.  DE 115 Exhibit 11 at 7.  Duro-Med also marketed this transport chair as a Duro-Med product.  DE 115 Exhibit 4 at 18-19.  Thus, even assuming ENSD did manufacture the transport chair, given the fact that Duro-Med supplied a chair to ENSD for comparison purposes which may have been duplicated and the fact that the product was marketed as a Duro-Med product, a jury could reasonably conclude Duro-Med's actions are sufficient to impose liability under K.R.S. § 411.300.  The middleman statute shields the distributor only from liability "arising solely from the distribution or sale of the product."  K.R.S. § 411.340.

One who moves for summary judgment must show that there is no genuine issue of material fact.  Based on the presence of the American Bantex registry tag, a juror could conclude the manufacturer has not been identified or that Duro-Med's actions take it outside the scope of K.R.S. § 411.340.  Having found this factual dispute, the court will deny Duro-Med's motion to the extent it is based on K.R.S. § 411.340.

## B.  Design Defect, Manufacturing Defect, and Failure to Warn Claims

"Courts have distinguished three types of product defect: (1) manufacturing defects or deviations from the product's design that create unreasonable risks of harm; (2) design defects or unreasonable risks of harm inherent in the product's design; and (3) warning defects or unreasonable risks of harm that could have been

6

reduced or avoided by the provisions of reasonable instructions or warnings."

*Edwards v. Hop Sin, Inc.,* 140 S.W.3d 13, 15 (Ky. Ct. App. 2003).  The plaintiff

makes claims under all three theories.

The plaintiff's proposed product defect expert witness is William E.

Dickinson, a mechanical engineer employed with Wolf Technical Services Inc.

Dickinson examined Jarrett's transport chair and the wheel brakes on the chair.

Based on his analysis of the left wheel brake and the broken right wheel brake,

Dickinson concluded that the "design and construction of the [wheel brake] is

defective and unreasonably dangerous due to the fact that the handle can be forced

beyond its normal operating range and into a position where the brake on the

[transport chair's] wheel is released and the wheel is free to roll."  DE 115 Exhibit

14 at 2.  Further, he opined that an affordable design alternative of increased

interference between the handle and the stop so the handle could not be forced

beyond its normal operating range would have likely prevented the wheel brake's

failure.  DE 115 Exhibit 14 at 2.  Although Dickinson believes the wheel brake is

defective, he  is unable to determine whether the transport chair was "designed

improperly or manufactured improperly."  DE 110 Exhibit 12 at 112.[5]

"Under Kentucky law, a manufacturing defect exists in a product when it

leaves the hands of the manufacturer in a defective condition because it was not

---

[5] Even the plaintiff's brief does not specifically state which theory he is
advancing.  *See* DE 115 at 38 ("[T]he fact remains this product was still defective,
whether through design or manufacture.").

7

manufactured or assembled in accordance with its specifications." *Greene v. B.F. Goodrich Avionics Systems, Inc.,* 409 F.3d 784, 788 (6th Cir. 2005). Dickinson does not know who manufactured the chair. DE 110 Exhibit 12 at 89. Without knowledge of the identity of the manufacturer, the expert will have a difficult time discussing the details pertaining to the process of manufacturing this product. Dickinson also has not seen any design specifications for this transport chair or wheel brake. DE 110 Exhibit 12 at 112. During his examination of the left brake, he "pushed it beyond its stop position where it would not work," thus changing the condition of the brake. DE 110 Exhibit 12 at 63. The left brake would have been manufactured around the same time as the right brake, therefore providing a comparison to determine whether there was a manufacturing defect. Having altered the left brake, Dickinson can no longer determine whether the right brake was manufactured defectively based on a comparison with the left brake. As a matter of law, the plaintiff has failed to meet his burden of proof on the manufacturing defect claim.

In design defect cases, a product is considered defective only when "it is made according to an unreasonably dangerous design." *Estate of Bigham v. DaimlerChrysler Corp.,* 462 F. Supp. 2d. 766, 771 (E.D. Ky. 2006) (quoting *Jones v. Hutchison Mfg., Inc.*, 502 S.W.2d 66, 69 (Ky. 1973)); *see also Montgomery Elevator Co. v. McCollough by McCollough*, 676 S.W.2d 776, 780 (Ky. 1984) (plaintiff must prove the product was manufactured in "a defective condition

8

unreasonably dangerous.").  Under the "unreasonably dangerous" analysis, the

manufacturer is presumed to know the qualities, characteristics, and actual

condition of his product at the time he sells it, and the question is whether the

product creates "such a risk" of an accident of the general nature of the one in

question "that an ordinarily prudent company engaged in the manufacture" of such

a product "would not have put it on the market."  *Id.* (quoting *Nichols v. Union*

*Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980)).  Dickinson's testing falls

short of demonstrating an unreasonably dangerous design.  Dickinson failed to

measure the amount of force necessary to break the wheel brake, as he did not

measure the force when he "failed" the brake twice.  DE 110 Exhibit 12 at 63.

Instead, he found there is approximately 1/32 of an inch of interference to prevent

the handle from moving into a released position and with "too much force" applied

to the handle, such as if the "operator chooses to use their foot," it will slide by the

stop, thus releasing the clamping force and allowing the tire to be free to roll.  DE

115 Exhibit 14 at 3.  But he does not describe "the normal force applied versus the

strength of the materials or design."  DE 110 Exhibit 14 at 10.  While the

interference required was not quantified in his expert report, during his deposition

Dickinson stated that an alternative design of 1/8 of an inch of material would

provide proper interference.  DE 115 Exhibit 15 at 142.  However, "he provided no

measurements, calculations, scaled photographs, or design drawings to support

these measurements."  DE 110 Exhibit 14 at 12.  Although he looked at the

"spacing in the brakes" of two alternative design chairs, he did not measure the alternative chair's wheel size or wheel brake size.  DE 110 Exhibit 12 at 152. Dickinson cites to neither literature nor engineering codes or standards that specifically recommend that using 1/8 of an inch is a better design nor to any literature stating that 1/32 of an inch is defective.  *Id.* at 85, 86.  Dickinson also cannot specifically state how much the alternative design would cost the manufacturer.[6]

Kentucky law maintains that "proof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product."  *Jones v. Hutchinson Mfg., Inc.,* 502 S.W.2d 66, 70-71 (Ky. 1973); *see also Brock v. Caterpillar, Inc.,* 94 F.3d 220, 224 (6th Cir. 1996)(applying Kentucky law) ("[P]roof that technology existed, which if implemented would feasibly have avoided a dangerous condition, does not alone establish a defect.").  While the expert has opined that a 1/8-inch alternative would have been preferable, he has failed to present enough evidence that 1/32-inch interference is unreasonably dangerous.  In particular, Dickinson did not describe

---

[6]  Q:  And what is the cost for manufacturing a transport chair like the one at issue?
A: I don't know.  We're talking pennies to add on that material, potentially even less than that. . . .
Q: And you don't know the specific cost that it would have cost to add additional interference?
A: No, I don't know the specific.  DE 110 Exhibit 12 at 149, 150.

whether the force required to "fail" the brake is the normal force applied to this type of chair.  The absence of an expert's assessment of industry standards or practices, the state of the art in the industry, or similar accidents involving this or other products or other factors relevant to the issue of whether the product is actually defective is inadequate to prove defect.  *Fritz v. Campbell Hausfeld/Scott Fetzer Co.*, 2007 WL 1558509 (E.D.Ky 2007); *see also Stewart v. Gen'l Motors Corp.*, 222 F. Supp. 2d 845, 848 (W.D. Ky. 2002) ("[E]ven when the evidence is viewed in a light most favorable to Plaintiff, it establishes only that it was theoretically possible for Defendant to use a different type of air bag in Plaintiff's vehicle, not that the type of air bag actually used was defective or unreasonably dangerous.").

For the foregoing reasons, Duro-Med is entitled to summary judgment on the manufacturing-defect and the design-defect claims because the plaintiff has failed to present sufficient evidence to meet his burden in proving an unreasonably dangerous defective product.

The plaintiff also asserts a failure-to-warn claim.  Because a warning can make a product reasonably safe, "a product may be unreasonably dangerous in design, unless accompanied by a warning that it should not be put to a certain use."  *C & S Fuel, Inc v. Clark Equipment Co,* 552 F.Supp. 340, 347 (E.D. Ky. 1982).  "The duty to warn extends to the dangers likely to result from foreseeable misuse of a product."  *Morales v. American Honda Motor Co, Inc.*, 71 F.3d 531,

11

537 (6th Cir. 1995).  Jarrett's transport chair contained no warnings or instruction manuals.  DE 115 Exhibit 4 at 17-18 (Duro-Med "did not prepare any type of instruction manuals that [it] would have included in the product, nor would [it] have designated or identified any specific product labels, product warning labels [it] would have put on the product.").  In particular, Dickinson stated there were "no warnings or instructions on the [transport chair] to inform or warn the user of the need to apply light measured force to insure that the brake handle does not move beyond its locked position." DE 115 Exhibit 14 at 4.  There were also no warnings of the risk associated with operating the transport chair with only one brake.  One of the alternative design chairs contained such a warning to engage the dual wheel locks against the tires on both rear wheels prior to entering or leaving the chair.  DE 110 Exhibit 12 at 147.  Dickinson opined that a safety tip could have been placed on the transport chair at issue, which would have been inexpensive.  DE 114 Exhibit 7 at 144-145.  But Dickinson also pointed out that a warning pertaining to using light force "would not be an adequate solution because warnings are not as effective at removing hazards as designing the system so that the hazard would be eliminated."  DE 115 Exhibit 14 at 5.  Dickinson does not, however, argue that a warning would not have worked at all.  He merely opines that a better brake design should have been used, which would have avoided the need to warn one to use light measured force.  Although the plaintiff has failed to show sufficient evidence that a 1/32-inch interference was an unreasonably dangerous design, viewing the

12

failure-to-warn evidence in a light favorable to the plaintiff, the court concludes that a juror could find the chair was defective due to the absence of any warning on use of the wheel brake; there may have been an unreasonable risk of harm of using only one brake or pressing the brake with too much force, and that harm may have been reduced by the provisions of reasonable instructions or warnings. *See Edwards v. Hop Sin, Inc.,* 140 S.W.3d 13, 15 (Ky. Ct. App. 2003). Therefore, the court will allow the plaintiff to proceed on his claim that the product was defective because it lacked any warnings.

## *C. Proximate Causation*

Duro-Med claims it is entitled to judgment as a matter of law because the alleged defect was not the proximate cause of Jarrett's accident.  Under Kentucky law, a plaintiff has the burden of establishing causation in claims of negligence and strict liability.  *Stewart v. General Motors Corp.,* 222 F.Supp.2d 845, 850 (W.D.Ky 2002).  "The plaintiff in a defective design action must produce evidence to justify a reasonable inference of probability rather than mere possibility that the alleged design defects were responsible for her injuries."  *Id.* at 848.  Because the court has found that the plaintiff has failed to show a manufacturing defect or a design defect, the only issue on proximate cause is the alleged defect pertaining to Duro-Med's failure to warn.  Thus, the defendant must demonstrate, as a matter of law, that no reasonable jury could find that its failure to warn was a substantial factor contributing to the accident.  *Morales v. American Honda Motor Co, Inc.*, 71 F.3d

13

531, 537 (6th Cir. 1995).

In products liability cases, expert witnesses are generally necessary to prove such matters as product defect and proximate causation, "unless of course the nature of the defect and the resultant injuries are so obvious as to fall within the general knowledge of the ordinary person." *Honaker v. Innova, Inc.,* 2007 WL 1217744 (W.D.Ky. 2007).  At issue is whether a failure to warn the user to apply light measured force when engaging the wheel brake or to use both wheel brakes was a substantial factor contributing to Jarrett's accident.  Both inquiries are within the common knowledge of an ordinary juror, as they simply require the juror to determine what actions the user of the chair would have taken had those warnings been placed on the product.  The plaintiff's expert also has offered opinions regarding warnings in this case.  As previously mentioned, another transport chair contained a warning to engage the dual wheel locks against the tires on both rear wheels before entering or leaving the chair.  Dickinson stated that "if a similar warning were on the incident chair, the user would have known that they needed to have both wheel [brakes] in place and working and may not have used it with a single wheel [brake]."  DE 110 Exhibit 12 at 147.  And despite Dickinson's conclusion that a warning to use light measured force would not have been an adequate solution, this was based on his opinion that the adequate solution would be to eliminate the harm altogether and add more interference to the wheel brake.

14

DE 115 Exhibit 14 at 5; DE 110 Exhibit 12 at 110.[7]

Jarrett used the transport chair in order to be transported to the Wheels vehicle which was taking her to dialysis.  She used the transport chair after the plaintiff had removed the right wheel brake. DE 114 Exhibit 3.  Also, Jarrett, the plaintiff, and Wilson were all aware that the driveway had an incline.  But when weighing the options, without a warning on the chair, the plaintiff stated that "walking with a cane or a walker down the incline unassisted was a bigger danger than using the transport chair."  DE 108 Exhibit 2 at 113.  The plaintiff believed the Wheels employee could use the one brake properly.  Id. at 114.

Duro-Med asserts that many of the actions by the plaintiff, Jarrett, and Wilson constitute superseding causes, thus cutting off Duro-Med's negligence, if any.  "A superseding cause is an intervening independent force; however, an intervening cause is not necessarily a superseding cause.  We say that, if the resulting injury is reasonably foreseeable from the view of the original actor, then the other factors causing to bring about the injury are not a superseding cause." *Welsh v. Galen of Virginia, Inc.,* 128 S.W.3d 41, 57-58 (Ky. Ct. App. 2001).  The question of whether an undisputed act or circumstance was or was not a

---

[7] At the time he wrote his report, Dickinson believed the right wheel brake was attached to the transport chair on the day of the accident and that it failed on that day, causing the wheel to be free to roll. *Id.* at 48, 65.  It is left to the trier of fact to determine whether a warning to use light measured force would have altered the behavior of the user who broke the brake, thus leading to the plaintiff's removal of the brake.  A juror could reasonably conclude that, but for the absence of the brake, the accident would not have occurred.  The plaintiff opined that the brake would not have worked if it were on the wheelchair.  DE 115 Exhibit 2.

15

superseding cause is a legal issue for the court to resolve, and not a factual question for the jury. *James v. Meow Media, Inc.*, 90 F.Supp.2d 798, 806 (W.D.Ky. 2000). It is undisputed that the plaintiff removed the brake, Jarrett continued to use the chair, Jarrett warned Wilson the brake was missing, and Wilson let go of the transport chair with the knowledge that there was only one brake. The Kentucky Court of Appeals has enumerated the attributes of a superseding cause.[8] The court finds none of the undisputed acts equate to a superseding cause under the *NKC Hospital* factors. Duro-Med's expert, Jeffery A. Noland, who has experience in the transportation business, opines that the actions of Wilson directly resulted in Jarrett falling out of her chair. DE 108 Exhibit 9. But a superseding cause requires an act that is not reasonably foreseeable by Duro-Med. A transport chair is designed to be used by a third party to transport the chair's passenger. DE 131 at 21. Any action by Wilson, the third party using the chair, should have been foreseeable to Duro-Med.[9]

---

[8] "1) an act or event that intervenes between the original act and the injury; 2) the intervening act or event must be of independent origin, unassociated with the original act; 3) the intervening act or event must, itself, be capable of bringing about the injury; 4) the intervening act or event must not have been reasonably foreseeable by the original actor; 5) the intervening act or event involves the unforeseen negligence of a third party [one other than the first party actor or the second party plaintiff] or the intervention of a natural force; 6) the original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create a negligent condition or occasion; the distinction between a legal cause and a mere condition being foreseeability of injury." *NKC Hospitals, Inc. v. Anthony,* 849 S.W.2d 564 (Ky. Ct. App. 1993).

[9] Noland opines that under proper procedure, once the driver discovered Jarrett was to be transported in a travel chair, he did not prepare the vehicle prior

16

Several material issues of fact exist including, but not limited to, whether the transport chair would have been used had a warning been placed on the chair to use both brakes, whether a warning to use a light measured force on the brake would have been heeded by the user of the transport chair, and whether the absence of that warning was a substantial factor in Jarrett's accident.  Considering the evidence in the light most favorable to the plaintiff, there is evidence to permit the reasonable inference that Duro-Med's failure to warn was a substantial factor in bringing about the harm to Jarrett.  Therefore, Duro-Med's motion for summary judgment as to proximate cause on the failure to warn is denied.

### D. Spoliation of Evidence

"Spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction." *Beck v. Haik,* 377 F.3d. 624, 641 (6th Cir. 2004).[10]  The plaintiff's expert, William E. Dickinson, unintentionally altered the condition of the left brake on the transport chair when he "pushed it beyond its stop position where it would not work."  DE 110 Exhibit 12 at 63.  This was not an intentional destruction of evidence.  The evidence was not

---

to taking her to the bus.  The driver also violated company policy when he let go of the travel chair on an incline, when policy states the drivers should "always treat the wheelchairs as if the brakes did not function at all.  Therefore, do not leave a passenger unattended on an incline."  But Duro-Med should have foreseen such an action, even if it violates company policy.

[10]"Under Federal Rule of Evidence 302, state law supplies any inference or presumption arising from the spoliation of evidence."  *Id.*

17

lost, misplaced, or impaired to a point where Duro-Med's expert could not perform an evaluation.  While the exemplar left brake on the plaintiff's transport chair is no longer in the identical condition, the "right one is; the right one, which is the one at issue, is in its condition as it failed."  Id. at 64.  Although the court understands Duro-Med's expert can no longer compare the left brake with the failed right brake at issue, Duro-Med's expert can examine the failed right brake in its unaltered form, and he can examine the left brake in its changed position.

Even assuming for the purpose of this motion that spoliation under the law has occurred, the unavailability of evidence due to the plaintiff's destruction and the negative inferences do not mandate granting summary judgment.  *Beil v. Lakewood Engineering and Mfg. Co.*, 15 F.3d. 546, 552 (6th Cir. 1994).  The court *may* grant summary judgment if the court determined that Duro-Med is entitled to a judgment as a matter of law because the plaintiff is unable, due to the unavailability of the evidence and the negative inferences, to offer evidence sufficient to support its case.  *Id.* at. n1.  The allegedly defective product is still available for examination, and thus the plaintiff still has the relevant evidence available to prove his case.  Thus, Duro-Med is not entitled to summary judgment on this ground.

Duro-Med also requests, alternatively, exclusion of evidence or a jury instruction pertaining to the altered brake.  As spoliation is the intentional destruction of evidence, and the court finds Dickinson did not intentionally alter the

18

brake, the court will deny Duro-Med's request for such alternatives.[11]

### E. Gross Negligence and Punitive Damages Claim

Under Kentucky law, in order to state a claim for punitive damages, the plaintiff must allege that Duro-Med "acted toward the plaintiff with oppression, fraud or malice." K.R.S. § 411.184(2). Mere commission of a tort is not sufficient to invoke punitive damages; instead, the "defendant's misconduct must be shown to have been aggravated, to have amounted to gross negligence, or to reckless disregard for the lives and safety of others." *Sufix, U.S.A., Inc v. Cook,* 128 S.W.3d 838, 840 (Ky. Ct. App. 2004). In a products liability action, the plaintiff must show not only an injury-causing product defect, but also that something about the defendant's conduct was outrageous, was at least grossly negligent, and amounted to reckless indifference. *Id.* at 841.

"A manufacturer's failure to test for defects that pose a risk of serious injury and that are susceptible to adequate pre-release testing can amount to a conscious or reckless disregard for the rights and safety of others and thus can justify an award of punitive damages." *Id.* at 842. Duro-Med contends it played no role in the manufacture of this chair. DE 115 Exhibit 4 at 63. But even if Duro-Med

---

[11] When there is the intentional destruction of evidence, state law supplies any inference or presumption arising from the spoliation of evidence. *Louisville Gas & Elec. Co. v. Continental Field System, Inc.,* 420 F.Supp.2d 764 (W.D.Ky. 2005). Unlike *Louisville Gas & Elec. Co,* where the court instructed the jury as to spoliation because the plaintiff's expert misplaced evidence, Duro-Med is still able to test and examine the opinions of the plaintiff's expert.

played some role in the design, the plaintiff has failed to show the level of conduct which constituted reckless disregard in *Sufix*,[12] and has only stated that Duro-Med failed to perform any tests for defects and failed to provide any safety tips, warnings, labels or user manuals for the consumer.

Duro-Med states that it had no knowledge of any other defects in its transport chairs and the plaintiff does not refute this.  DE 115 Exhibit 4 at 42-43. Instead, the plaintiff states that Duro-Med acted with cavalier willingness to expose frail consumers to unreasonable risk, but he provides no evidence to support this claim.[13]  "Kentucky law imposes a general duty on manufacturers and suppliers to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated."  *Watters v. TSR, Inc.,* 904 F.2d 378, 381

---

[12]In *Sufix*, in addition to evidence of defect, the plaintiff offered expert testimony that the defect of the weed trimmer disintegrating should have been discovered in the course of testing, but that testing had been grossly inadequate. There was no documentation of testing by the company.  There was evidence that a metal-capped version of the weed trimmer had been distributed in Italy where the plastic version was rejected, but that the company distributed the plastic version in the United States.  The company had received notice from customers of product failures.  Finally, there was evidence that the product had shattered in a field test, but that the company did not appreciate the defect or recall the product.  *Sufix,* 128 S.W.3d at 841.

[13]The plaintiff states that Duro-Med failed to perform tests for defects despite advertising its product as safe, and that such actions amount to negligence. Additionally, the plaintiff argues that the failure to warn was grossly negligent. Mere failure to warn cannot amount to gross negligence unless the plaintiff can demonstrate Duro-Med had some knowledge of the alleged defect, which the plaintiff has failed to show.  And even if Duro-Med manufactured the product, mere failure to test cannot amount to gross negligence under *Sufix.*

20

(6th Cir. 1990).  Even viewing the assertions in a light most favorable to the plaintiff, the court finds that the plaintiff has failed to show as a matter of law that Duro-Med's actions, such as its failure to warn, amounted to gross negligence which would entitle the plaintiff to punitive damages.  The plaintiff has failed to show the level of egregious conduct which was present in the *Sufix* case. Therefore, Duro-Med is granted summary judgment as to the plaintiff's gross negligence and punitive damages claim.

## F.  Breach of Express Warranty

The plaintiff asserts a breach-of-express-warranty claim against Duro-Med. "An express warranty may be created by any affirmation of fact or promise made by a seller which relates to the goods."  *Overstreet v. Norden Laboratories, Inc.,* 669 F.2d 1286, 1290 (6th Cir. 1982) (citing K.R.S. § 355.2-313(1)(a)).  The plaintiff contends the statements made by Duro-Med in its advertisements contain several express warranties.[14]   A catalog description or advertisement may create an express warranty under certain circumstances.  *Id.* at 1290-1291.  Under Kentucky law, the warranty must be the basis of the bargain between the parties, which

---

[14]At the time of sale Jarrett received a customer satisfaction certificate, but this document contains no promises which relate to the goods which would create an express warranty that the transport chair would conform to those promises. Instead, the certificate provides the telephone number for a customer- care hotline for the consumer to call if "for any reason [he] is not completely satisfied, or [has] questions concerning [his] product's assembly, use, or maintenance."  DE 110 Exhibit 17.

21

means that "it has been relied upon as one of the inducements for purchasing the product." *Overstreet,* 669 F.2d at 1291. The plaintiff cannot recall receiving manuals, sales literature or advertisements with the product at the time of purchase. DE 131 Exhibit 2. Therefore, even if there was an express warranty contained in one of Duro-Med's advertisements, the plaintiff has failed to present proof of an essential element of the breach of an express warranty claim: that he or Jarrett relied on those advertisements in purchasing the product. Therefore, the court finds Duro-Med is entitled to summary judgment on the breach-of-express-warranty claim.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that Duro-Med's motion for summary judgment under K.R.S. §411.340 (DE 107) is **DENIED.**

**IT IS FURTHER ORDERED** that Duro-Med's motion for summary judgment as to proximate causation (DE 108) is **DENIED.**

**IT IS FURTHER ORDERED** that Duro-Med's motion for leave to file memo in excess of 40 pages (DE 109) is **GRANTED.**

**IT IS FURTHER ORDERED** that Duro-Med's motions for summary judgment (DE 110) are **DENIED** in part and **GRANTED** in part as stated above.

**IT IS FURTHER ORDERED** that both the plaintiff's and the defendant's

22

pending motions in limine will be heard on January 10, 2007, at the pretrial

conference.

Signed on  January 8, 2008

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

23